LUSK, Appellant, vs. STOUGHTON STATE BANK, Respondent.

*March 14—March 31, 1908.*

*Appeal: Assumption of fact: Banks: Certificate of deposit: Statute of limitations: Construction.*

1. Where, in an action on certificates of deposit, an appeal was taken on the hypothesis that the statute of limitations had run before the action was commenced, and there is no finding of such fact, but merely a conclusion of law that the action was barred, this court may assume, in the absence of a bill of exceptions and of any claim by counsel to the contrary, that it was admitted or shown by undisputed evidence on the trial that the action was not commenced within the statutory period.
2. In an action on the following certificate of deposit: "This certifies that L. has deposited in the Stoughton State Bank $263.75, credit of himself, payable in bankable currency upon the re-

turn of this certificate properly indorsed. R. D., Cashier," *held*, that sec. 4230, Stats. (1898), exempting from the operation of the statute of limitations actions brought upon "any bills, notes or other evidences of debt issued by any bank or issued or put into circulation as money," covers only bills, notes, evidences of debt, and like paper issued by a bank to circulate as money, and does not include the foregoing certificate.

3. The words "issue" and "issued," when used with reference to the giving out of obligations by banks, have a restricted, special, and almost technical meaning, relating exclusively to the moneyed currency of the country.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This was an action upon two certificates of deposit, one for $263.75 bearing date April 14, 1879, and bearing interest at four per cent. if left four months and at five per cent. if left six months; another for $214 bearing date September 4, 1880, and bearing interest at three per cent. if left four months and at four per cent. if left six months. The form, exclusive of interest memoranda, was as follows:

"This certifies that *Dr. A. P. Lusk* has deposited in the Stoughton State Bank $263.75 credit of himself, payable in bankable currency upon return of this certificate properly indorsed. ROBE DOW, Cashr."

The complaint averred that prior to 1879 the defendant became, ever since has been, and now is a banking corporation organized and existing under the laws of the state of Wisconsin under the name of the *Stoughton State Bank.* It also contains an averment that the defendant held itself out to the public as a banking corporation in a manner set forth. Said certificates, properly indorsed, have been presented to the defendant and payment demanded and refused, but no date of demand or presentation is averred. Another cause of action in the complaint related to matters not relevant upon this appeal. The answer denied that the defendant was a banking corporation, and averred that up to March 30, 1882, the *Stoughton State Bank* was a private banking in-

stitution, which did not become an incorporated bank until the date last mentioned. The six-year statute of limitations is then pleaded.

For the appellant there was a brief by *Sanborn & Blake,* attorneys, and *Jones & Schubring,* of counsel, and the cause was argued orally by *John B. Sanborn.*

Among other references upon the part of the appellant were the following: Sec. 4230, Stats. (1898); *Curran v. Witter,* 68 Wis. 16, 31 N. W. 705; sec. 4, subch. II, ch. 234, Laws of 1903; *Whitney v. Robinson,* 53 Wis. 309, 10 N. W. 512; *Ricketson v. Galligan,* 89 Wis. 394, 62 N. W. 87; Clark & M. Priv. Corp. 282; *Black River Imp. Co. v. Holway,* 85 Wis. 344, 55 N. W. 418; Terr. Stats. 1839, p. 261, § 19; sec. 18, ch. 127, R. S. 1849; sec. 23, ch. 138, R. S. 1858; 26 Am. & Eng. Ency. of Law (2d ed.) 610; *Koelzer v. First Nat. Bank,* 125 Wis. 595, 104 N. W. 838.

For the respondent there was a brief by *Clancey & Loverud,* and oral argument by *J. M. Clancey.*

Among other references upon the part of the respondent were the following: *State ex rel. Lederer v. Inter-National Inv. Co.* 88 Wis. 512, 60 N. W. 796; *Bevitt v. Crandall,* 19 Wis. 581; Suth. Stat. Constr. § 268; 21 Am. & Eng. Ency. of Law (2d ed.) 1012; *Gallagher v. McKeague,* 125 Wis. 116, 103 N. W. 233; *Alabama v. Montague,* 117 U. S. 602, 6 Sup. Ct. 911; *Edson v. Hayden,* 20 Wis. 682; *Jensen v. State,* 60 Wis. 577, 19 N. W. 374; *Morse v. Buffalo F. & M. Ins. Co.* 30 Wis. 534; 3 Am. & Eng. Ency. of Law (2d ed.) 771, 772; *Winterfield v. Stauss,* 24 Wis. 394; 5 Am. & Eng. Ency. of Law (2d ed.) 801; sec. 28, ch. 94, R. S. 1878; *Gove v. White,* 20 Wis. 425; 11 Am. & Eng. Ency. of Law (2d ed.) 387.

TIMLIN, J. There is nothing in the record before this court from which we can ascertain when this action was commenced. The findings of fact are silent upon this subject. A conclusion of law declares that the action upon these cer-

tificates of deposit is barred by the statute of limitations and there is no bill of exceptions. The case is presented here upon the hypothesis that more than six years intervened between the date of the last certificate of deposit and the commencement of this action. While ordinarily the conclusions of law should follow from the facts found we may, in the absence of a bill of exceptions and in the absence of any claim by counsel to the contrary, assume that it was admitted on the trial or shown by undisputed evidence that the action in question was not commenced within six years from the date of either certificate of deposit. The findings of the court below do not settle the question raised by the pleadings with reference to the corporate character of the defendant at the time its cashier executed and delivered these certificates of deposit. The only finding upon that subject is "that during the years 1879 and 1880 a banking institution was located at Stoughton, Wisconsin, doing a general banking business under the name and style of the *Stoughton State Bank,* and that during said years Robe Dow was the cashier of said bank." It is nowhere found that the defendant and this "banking institution" are identical nor that the defendant received the deposit or issued the certificates in question. The answer, however, contains a sort of a qualified admission that the private banking institution which existed prior to March 30, 1882, became incorporated on the date last mentioned and that the defendant is such corporation.

The argument in this court turned wholly upon the construction of sec. 4230, Stats. (1898), sec. 18, ch. 127, R. S. 1849, sec. 19, p. 261, Terr. Stats. 1839, and its application to these certificates of deposit. When this statute first appeared in 1839 in the chapter limiting the time for commencing actions it took the form of an exception in the following words:

"None of the foregoing provisions shall apply to any action brought upon a promissory note which is signed in the presence of an attesting witness provided the action be

brought by the original payee or by his executor or adminis-
trator, nor to an action brought upon any bills, notes or
other evidences of debt issued by any bank."

It continued in this form up to the statutes of 1858, when
the provision relating to witnessed promissory notes was
omitted and the section rewritten so as to read as follows:

"Sec. 23. None of the provisions of this chapter shall ap-
ply to any action brought upon any bills, notes or other evi-
dences of debt issued by any bank or issued or put in cir-
culation as money."     [Ch. 138.]

In the latter form it is now in force as sec. 4230, Stats.
(1898).    The appellant contends that this statute applies
to incorporated as well as unincorporated banks, banks of
discount as well as banks of issue, and exempts from the
operation of the statute of limitations all obligations of such
banks evidencing a debt of the bank whether such evidences
of debt were intended to circulate as money or not.    In short,
that this exemption from the statute of limitations relates
not to certain kinds of instruments, but to that class of mak-
ers therein designated as "any bank."    This is predicated
upon the generality of the words "bills, notes, or other evi-
dences of debt," and upon an historical review of the rela-
tions of banks to the commonwealth in the early years of
Wisconsin territory and state.    It would seem from the
banking laws in force in this territory in 1839 that there may
have been some instrument other than bank bills or bank
notes put in circulation or attempted to be put into circula-
tion as money, for sec. 1, p. 145, Terr. Stats. 1839, prohib-
its incorporated companies not authorized by law from re-
ceiving deposits, making discounts, or issuing notes or other
evidences of debt to be loaned or put in circulation as money.
Sec. 2, p. 146, Id., forbids persons or associations of per-
sons or bodies corporate, unless expressly authorized by law,
to issue any bills or promissory notes or other evidences of
debt for the purpose of loaning them or putting them into
circulation as money.    These provisions were carried for-

ward into ch. 39, R. S. 1849. In sec. 17, ch. 71, R. S. 1858 (formerly ch. 479, Laws of 1852), a bank is forbidden to pay out, to be put in circulation as money, "any bill, note, certificate of deposit, or other paper having the similitude of a bank note and issued without authority." Then apparently for the first time in this state provision was made for the bank comptroller delivering to each state bank upon its giving security certain engraved and printed notes "in the similitude of bank notes," countersigned by the comptroller, and these and no other the banks, after signing, could issue for the purpose of circulation. The comptroller was also authorized to refuse to deliver these engraved and countersigned notes to any bank unless he had satisfactory evidence that such banking association *had not been or is not to be organized for the purpose of issuing circulating notes merely,* but was organized for the purpose of doing a banking business by discounting bills, notes, and other evidences of debt, by receiving deposits, by buying and selling gold and silver bullion, foreign and inland bills of exchange, loaning money on real and personal security, and exercising such incidental powers as might be necessary to carry on such business. It was further required that he be satisfied that the *place where the business of the association is carried on is an inhabited town, village, or city* where the ordinary business of inhabited towns, villages, or cities is transacted.

Prior to 1858 the Wisconsin Marine & Fire Insurance Company had a charter from the state which authorized it to carry on the business of marine, fire, or life insurance, also to receive money on deposit and loan the same. This charter contains a provision that if the moneys so received on deposit were in bills, notes, *or other evidences of debt* issued by any banker, bank, or other corporation, and loaned by the insurance company, such bills, etc., should be indorsed by the president of the insurance company with the corporate name thereof, and redeemed at its usual place of business in

gold or silver on demand, if the banker, bank, or other corporation first issuing the same should fail. This indicates two things: First, that the expression "bills, notes, or other evidences of debt" was then used in statutes to designate and cover the various forms of obligation used by banks for the purpose of putting the same into circulation as currency; second, that there was at least one other, not a bank or banker, which was indorsing and loaning and thereby putting into circulation as currency bills, notes, *and other evidences of debt.*

Carrying back the history of the statute in question, we find it word for word in sec. 4, ch. 120, R. S. Mass. 1836. It was probably suggested by *Hinsdale v. Larned,* 16 Mass. 65, as indicated in *Tower v. Appleton Bank,* 3 Allen, 387, 389. Or it might have been suggested by the difficulty of applying the statute of limitations to bills and notes or other evidences of debt put into circulation as money received back and reissued, which difficulty must have occurred to many lawyers. Cases in 6 Cent. Dig. col. 1556, § 816. If evidences of debt other than notes or bills, whether specialties, formal instruments, or mere tokens, had been issued to circulate as currency, as the history of this statute and the words of other statutes *in pari materia* would seem to indicate, then the rule of interpretation, *ejusdem generis,* would govern, and not the exception to that rule quoted by appellant from 26 Am. & Eng. Ency. of Law (2d ed.) 610. Again, the statute speaks of bills, notes, or other evidences of debt issued by any bank. The word "issue" and the word "issued" have many different meanings depending upon the subject matter of the writing or discourse, or upon the context, or both. But when the word "issue" is used with reference to the giving out of obligations by banks it has a "restricted, special, and almost technical meaning, relating exclusively to the moneyed currency of the country." *Curtis v. Leavitt,* 17 Barb. 309, 341. The execution and delivery of an instrument or obligation

not intended for further circulation by delivery is rarely spoken of as an issue of such instrument. When we speak of bills, notes, or other evidences of debt issued by any bank, it is quite difficult to believe that it is intended thereby to cover or include a contract made by the bank with one of its officers for his salary, or the execution of a bond and mortgage for the purchase money of its office site. One meaning of the word "issue," used as a verb, is "to put into circulation; to emit, *q. v.*: as, to issue bank notes, bonds, script." Anderson, Law Dict. 569.

Although only half a century has passed since the 1858 revision of the Wisconsin statutes, the banking methods of those days are known only in history or tradition. But it may readily be inferred that banks organized solely for the purpose of issuing their bills, notes, and other evidences of indebtedness to circulate as currency, and having their places of business fixed in uninhabited towns, villages, or cities, were ingenious enough to evade any statute which mentioned merely "bills and notes" without adding words of wider signification. Probably to forestall such enterprise and ingenuity the expression "bills, notes, or other evidences of debt" was necessary to also describe and cover any instrument or obligation not technically a bill or note by reason of the addition of a seal or some slight alteration, but in fact put in circulation as money. Putting bank notes into circulation at that time meant putting them into circulation as currency or money, because the bills and notes or other evidences of debt of solvent banks payable to bearer, although in form identical with the bill or note of a natural person, nevertheless formed part of the circulating currency. We think this is the sense in which the words under consideration are employed in this statute, and that sec. 4230, Stats. (1898), covers only bills, notes, and evidences of debt issued by a bank, that is to say, put into circulation as money by any bank. The amendment of 1858 included like paper put into

circulation by any person, natural or artificial. We must therefore hold that the certificates of deposit in question at the time they were executed and delivered and thereafter were not intended for circulation, were not put into circulation as currency, and are therefore not within the meaning of sec. 4230, Stats. (1898). Consequently, until the rule of that case is changed by legislation, *Curran v. Witter,* 68 Wis. 16, 31 N. W. 705, must control the decision of cases like the instant case. Moreover, a statute identical in terms has been in force in Michigan at least since 1838. This statute was construed in *Tripp v. Curtenius,* 36 Mich. 494, 499, to relate only to circulating notes and not to include certificates of deposit. We are therefore of opinion that the certificates of deposit in question fall within the general statute of limitations, sec. 4222, Stats. (1898), and not within the exception mentioned in sec. 4230, Id.

*By the Court.*—The order of the circuit court is affirmed.